UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID N. WILSON,
a/k/a DAVID N. WILLSON-BEY,

        Plaintiff,

v.                                      Case No. 2:05-cv-106
                                        HON. R. ALLAN EDGAR

TIM BUSCHELL, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        Plaintiff David N. Wilson, an inmate currently confined at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include Food Service Supervisor Tim Buschell, Food Service Supervisor John Hodges, Food Service Assistant Director Ray Gazlay, Food Service Director Herbert Berry and Classification Director Ann Maki, all of whom are employed at the Baraga Maximum Correctional Facility (AMF).

        Plaintiff was confined at AMF during the pertinent time period. Plaintiff states that on November 14, 2003, he was assigned to work in the AMF kitchen by Defendant Maki. Plaintiff's employment continued through November 22, 2004. Plaintiff alleges that he received above average work reports for each month of his employment and received bonus pay as a result. During Plaintiff's employment, he complained about Defendant Hodges' conduct towards prisoners, which included harassing and belittling them. In addition, he and other prisoners complained about racial discrimination on the part of Defendant Buschell. Plaintiff claims that Defendant Buschell forced

black prisoners to do jobs assigned to white prisoners, and that the failure to comply with his authority would result in lost bonus pay, being fired or the receipt of a misconduct ticket. Plaintiff states that he eventually confronted Defendant Buschell, who replied, "You people don't do what I do, stay in your place Willson [sic]."

On September 6, 2004, Plaintiff submitted a grievance against Defendant Buschell for "racial intimidation." Defendants Buschell and Hodges then placed false write ups in Plaintiff's work record, charging Plaintiff with being disruptive and uncooperative. Plaintiff was consequently deprived of his bonus pay of $40.19 for the month of September. The write ups stated that Plaintiff had entered into conversation with an unnamed person, had failed to put a cup in the dish tank, and was in the habit of obtaining a medical lay-in whenever he did not feel like going to work. Plaintiff spoke with Defendant Gazlay and provided evidence that the write ups were false. Specifically, Plaintiff showed that Defendant Buschell's write up was back dated to make it appear as if it was written prior to Plaintiff's grievance being filed. Plaintiff also pointed out that his medical records and the institutional log and count sheets showed that he had only left work once during his 10 month employment for medical reasons. The records also showed that Plaintiff had worked an extraordinary amount of overtime. Defendant Gazlay told Plaintiff that if he complained, he would not receive a bonus.

Plaintiff took his complaint to Defendant Berry, who told Plaintiff to quit his job, and not to complain about staff. Defendant Berry also told Plaintiff that complaints would lead to the continual loss of his bonuses. On October 8, 2004, Plaintiff submitted a grievance regarding the retaliatory conduct of Defendants Hodges, Buschell, Gazlay and Berry. Defendants Gazlay and Berry denied Plaintiff's grievance. Plaintiff filed a step II grievance on October 22, 2004. On October 26, 2004, Plaintiff observed Defendants Hodges and Berry talking to each other in the food

service office and, shortly thereafter, Defendant Hodges gave Plaintiff a false misconduct ticket. Plaintiff subsequently asked Defendant Berry to intervene and was told that Defendant Hodges was going to "do what he is supposed to do." Plaintiff states that Defendants knew that if he was found guilty of the misconduct ticket, he would lose his job.

On October 26, 2004, Plaintiff filed a grievance on Defendants Hodges and Berry for retaliation and harassment, which was denied by Defendant Berry. On November 10, 2004, Plaintiff submitted a notarized letter to AMF Warden Tim Luoma, complaining about the Defendants conduct. Warden Luoma failed to intervene on Plaintiff's behalf. On November 16, 2004, Plaintiff was found guilty of the false misconduct and was terminated from his job. Plaintiff filed a request for rehearing, claiming that he had been denied the right to present witnesses and evidence in his own defense.

On November 22, 2004, Plaintiff was interviewed by Defendant Maki, who refused to reassign Plaintiff to his job and stated that Plaintiff was an instigator, who needed to learn how to get along with staff. Plaintiff claims that he was treated differently from other inmates who had been laid-in from food service after being found guilty of a major misconduct, because those inmates were immediately reassigned to food service. Plaintiff states that he identified approximately eight other prisoners who had been returned to food service after a misconduct report, and that some of the prisoners had been returned to food service many different times after receiving misconduct reports. Defendant Maki decided that the food service jobs Plaintiff asked about would be given to white prisoners, as the jobs are considered "special" and require workers who are not a security threat.

Plaintiff was subsequently assigned to work as a "7-unit porter," and was given a special requirement to work for an extended period of time with positive work reports. This means

- 3 -

that Plaintiff was not to utilize the grievance process during this period of time. On December 13, 2004, Plaintiff submitted a grievance on Defendant Maki, claiming that she had violated Plaintiff's equal protection rights. On January 25, 2005, Warden Luoma responded to Plaintiff's step II grievance appeal by stating that Plaintiff was not required to "do an extended period of time on his current assignment" and that prisoners were eligible for reassignment once they demonstrated responsibility on an assignment for six months. Luoma also stated that when Defendant Maki spoke to Plaintiff, he told her that he preferred to be assigned to the kitchen laundry job, so that he would still get good pay, but would not have to deal with the food service staff because the work location would be in the housing unit. However, Plaintiff was assigned a job as porter because unit staff was not comfortable with Plaintiff in such a position due to security concerns. (*See* Step II Response to AMF 04-12-03367, attached to Plaintiff's complaint as Exhibit G.) Plaintiff claims that he never told Defendant Maki that he did not want to work with food service staff, and that she conspired with the other Defendants to have Plaintiff assigned to work in the lowest paying job with unusual and special requirements.

Plaintiff requested reassignment on February 4, 2005, after he had been on his job assignment for six months. On February 9, 2005, Defendant Maki responded to Plaintiff's request, but failed to provide him with a new job. On February 17, 2005, Defendant Maki again assigned Plaintiff to the porter job, stating that Plaintiff needed to become more cooperative. On February 19, 2005, Plaintiff submitted another grievance on Defendant Maki regarding her continued discriminatory and retaliatory actions.

Plaintiff claims that Defendants' actions violated his rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiff is seeking compensatory and punitive damages, as well as declaratory and injunctive relief.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (docket #17). Plaintiff has filed a response (docket #30) and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Initially, Defendants claim that they are entitled to summary judgment because Plaintiff did not exhaust all of his claims against Defendant Corrections Officers prior to filing his lawsuit. Defendants contend that, therefore, Plaintiff's entire complaint should be dismissed pursuant to the total exhaustion rule as set forth by the Sixth Circuit in *Jones-Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005). However, another panel of the Sixth Circuit has more recently held that *Jones-Bey* was improperly decided. In *Spencer v. Bouchard,* F.3d , 2006 WL 1528876 (6th Cir, June 6, 2006), the court held that the "partial exhaustion rule" is the law of this Circuit requiring the dismissal of only those claims that are unexhausted and allowing the case to proceed on the exhausted claims. Since the Sixth Circuit is unable to affirmatively decide this issue, the safest course is to follow this newly established "partial exhaustion rule," until the Supreme Court hopefully resolves this issue later this term in *Williams v. Overton*, 126 S.Ct 1463; *Jones v. Bock*, 125 S.Ct. 1462 (2006).

With regard to Plaintiff's compliance with the exhaustion requirement on his individual claims, Defendants state that Plaintiff failed to submit complete documentation for the five grievances he attached to his complaint. However, Defendants misconstrue the requirements of the exhaustion requirement. A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, **if the decision is available**. *Brown*, 139 F.3d at 1104 (emphasis added). In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). In his complaint, Plaintiff specifically described the steps he took in filing grievances and that each grievance and appeal were unsuccessful. Therefore, the undersigned concludes that Defendants' claim regarding exhaustion of administrative remedies lacks merit.

With regard to Plaintiff's equal protection claim against Defendant Buschell, Defendants contend that they are entitled to summary judgment because Defendant Buschell's comment to Plaintiff that "You people don't do what I do, stay in your place, Willson" did not evidence a discriminatory intent. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. Where legislation singularly and negatively affects a "quasi-suspect" class such as one defined by gender, the level of scrutiny is "intermediate" and the law is valid if it is "substantially related to a sufficiently important government interest." *Id.* at 440-41. Consequently, "[u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998), *cert. denied*, 525 U.S. 1139, 119 S. Ct. 1028 (1999) (quoting *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)).

In this case, Plaintiff alleges that Defendant Buschell forced black prisoners to do jobs assigned to white prisoners, and that the failure to comply with his authority would result in lost bonus pay, being fired or the receipt of a misconduct ticket. Plaintiff states that he eventually confronted Defendant Buschell, who replied, "You people don't do what I do, stay in your place

Willson [sic]." Defendants state that when Defendant Buschell said "you people," he was not referring to black people, but was merely referring to all of the workers and was instructing them to stay at their jobs. Defendants offer Defendant Buschell's affidavit is support of this assertion. However, Defendants ignore the fact that the above statement must be construed in light of the surrounding circumstances, which allegedly included Defendant Buschell's conduct in forcing black prisoners to perform tasks assigned to white prisoners. The Sixth Circuit has held that a pattern of racial harassment involving racial slurs may violate the Equal Protection Clause. *Knop v. Johnson*, 977 F.2d 996, 1013-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 973 (1993). In addition, the use of racial slurs along with harassment or some other conduct that deprives the victim of established rights, may state a claim for violation of the Equal Protection Clause. *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999); *Williams v. Kaufman County*, 86 F. Supp. 2d 586, 598 (N.D. TX, Feb. 7, 2000); *Oliver v. Cuttler*, 968 F. Supp. 83, 88 (E.D. N.Y., May 24, 1997). Therefore, the undersigned concludes that Defendants are not entitled to summary judgment on Plaintiff's equal protection claim against Defendant Buschell.[1]

Defendants claim that they are entitled to summary judgment on Plaintiff's claims that the major misconduct ticket written by Defendant Hodges, and instigated by Defendant Buschell, was retaliatory and violated plaintiff's due process rights. The Supreme Court has held that a claim for declaratory and injunctive relief, as well as for monetary damages, based upon allegations of deceit and bias that necessarily implies the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which

---

[1] Defendants do not address Plaintiff's equal protection claims against Defendant Maki or any of the other named Defendants.

held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original).

The Supreme Court recently revisited this issue in *Wilkinson v. Dotson*, 125 S. Ct. 1242 (Mar. 7, 2005), a case in which the plaintiffs claimed that the retroactive application of parole guidelines violated the Constitution's *Ex Post Facto* and Due Process Clauses. The plaintiffs sought a new parole eligibility review and a new parole hearing in accordance with the correct guidelines. *Wilkinson*, 125 S. Ct. at 1244. In *Wilkinson*, the Court discussed the effect of its decisions in *Heck* and *Edwards*, as well as *Preiser v. Rodriguez*, 411 U.S. 475 (1973) and *Wolff v. McDonnell*, 418 U.S. 539 (1974) on the issue:

> Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement--either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody. Thus, *Preiser* found an implied exception to § 1983's coverage where the claim seeks--not where it simply "relates to"-- "core" habeas corpus relief, *i.e.,* where a state prisoner requests present or future release. Cf. *post,* at ----5 (KENNEDY, J., dissenting) (arguing that *Preiser* covers challenges that "relate ... to" the duration of confinement). *Wolff* makes clear that § 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner. *Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence. And *Balisok*, like *Wolff*, demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of not previously invalidated) state confinement. These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state

>> conduct leading to conviction or internal prison proceedings)--*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson*, 125 S. Ct. at 1247-48. The Court then concluded that because the plaintiffs' claims did not necessarily imply the invalidity of their convictions or sentences, they could present these claims in the context of a § 1983 action. *Id.* at 1248.

Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Wilkinson*, 125 S. Ct. at 1247-48, *Edwards*, 520 U.S. at 646. *See also Muhammad v. Close*, 124 S. Ct. 1303 (2004) (holding that the *Heck-Edwards* bar applies to prison misconduct challenges only when good-time credits are implicated).

In *Muhammad v. Close*, 124 S. Ct. 1303 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *See Johnson v. Coolman*, No. 03-1909, 2004 WL 1367271, at *1 (6th Cir. June 15, 2004). In other words, *Edwards* still applies where a plaintiff has lost good time as the result of the misconduct conviction. Under Michigan law, a prisoner loses good time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated credits. *Id.* Plaintiff does not assert that he did not forfeit good time credit for the month of his misconduct conviction. Accordingly, Plaintiff's claims regarding the allegedly false misconduct ticket remain noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, No. 03-2210, 2004 WL 1303359, at *1 (6th Cir. June 9, 2004).

However, Plaintiff also claims that Defendants retaliated against him for his conduct in filing grievances by writing poor work reports despite the fact that Plaintiff did not deserve them, denying him job bonuses, terminating him from his job and reassigning him to a less desirable job, and warning him that the should stop filing grievances. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Plaintiff's allegations meet the requirements set forth in *Thaddeus-X*. Defendants have failed to address these claims in their motion for summary judgment. Therefore, in the opinion of the undersigned, Defendants are not entitled to summary judgment on these claims.

In his complaint, Plaintiff claims that Defendants violated his Fourteenth Amendment procedural and substantive due process rights. As noted by Defendants in their motion for summary judgment, Plaintiff has no inherent constitutional right to rehabilitation, education, job assignments, or other programming. *See Rhodes v. Chapman*, 452 U.S. 337, 348, 101 S. Ct. 2392, 2400 (1981); *Moody v. Daggett*, 429 U.S. 78, 88 n.9, 97 S. Ct. 274, 279 n.9 (1976); *Newsom v. Norris*, 888 F.2d 371, 374-75 (6th Cir. 1989); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Bills v. Henderson*, 631 F.2d 1287 (6th Cir. 1980). Nor does state law create such an entitlement. Michigan's statutes and regulations give prison authorities complete discretion regarding programming assignments of prisoners. Michigan does not have

statutes or administrative rules restricting the discretion of its prison administrators concerning such decisions. Under Michigan Department of Corrections regulations, prison authorities retain broad discretion regarding the assignment of prisoners to rehabilitative programs and work assignments. *See* MICH. DEP'T OF CORR., Policy Directives 05.01.100 and 05.02.112.

Accordingly, since Plaintiff had no entitlement or liberty interest to his job assignment, the due process clause was not implicated by Plaintiff's termination, with or without cause. Therefore, to the extent that Plaintiff is claiming that his due process rights were violated because of the loss of his prison job, Defendants are entitled to summary judgment.

In addition, Defendants are entitled to summary judgment on Plaintiff's substantive due process claims. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205(1952); *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir.1993)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1288 (6th Cir. 1997). Claims of abusive language, or of general harassment, do not state an eighth amendment or substantive due process violation. *Ivey v. Wilson*, 832 F.2d 950 (6th Cir. 1987);; *Ishaaq v. Compton*, 900 F. Supp. 935, 944 (W.D. Tenn., 1995); *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn., 1994); *Banks v. Klapish*, 717 F. Supp. 520 (W.D. Mich. 1989); *Gilson v. Cox*, 711 F. Supp. 354 (E.D. Mich. 1989); *Rahman v. Stephenson*, 626 F. Supp. 886, 888 (W.D. Tenn. 1986). Because Plaintiff's allegations in this case fail to meet this formidable standard, Defendants are entitled to summary judgment on Plaintiff's substantive due process claims.

In their motion for summary judgment, Defendants claim that they are entitled to summary judgment on Plaintiff's conspiracy claims because they are conclusory. In addition,

Defendants claim that Plaintiff's conspiracy claims must fail because Plaintiff's underlying equal protection and retaliation claims lack merit. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989); *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985). In order to prove a civil conspiracy, a plaintiff must show that there was a single plan, that the coconspirators shared in the objective of the conspiracy, and that an overt act was committed in furtherance of the conspiracy. *Moore*, 890 F.2d at 834; *Hooks*, 771 F.2d at 943-944.

In order to state a claim of civil conspiracy under 42 U.S.C. § 1985, a plaintiff must establish (1) a conspiracy involving two or more persons, (2) for the purpose of depriving a person or class of persons the equal protection of the laws and (3) an act in furtherance of that conspiracy (4) that causes injury to person or property, or a deprivation of a right or privilege of a United States citizen. A plaintiff must also show some racial or other class-based invidiously discriminatory animus behind the conspirators' actions. *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998); *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996), *cert. denied*, 520 U.S. 1267 (1997); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992); *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992).

In Plaintiff's response to the motion for summary judgment, he states that Defendants worked in concert to punish Plaintiff for filing grievances and complaints. Plaintiff states that when he complained about Defendant Hodges to Defendant Berry, he was told that Defendant Hodges would do "what he [was] supposed to do." Shortly thereafter, Defendant Hodges wrote a false misconduct ticket on Plaintiff. Plaintiff was not allowed to return to his job in food service after the misconduct, despite the fact that other prisoners were allowed to do so after they received major misconducts. In Plaintiff's complaint, he alleges that Defendant Buschell discriminated against him

because he was black and that Defendants Buschell and Hodges acted in concert when they placed false write-ups in Plaintiff's work record. In addition, Plaintiff asserts that when he went to Defendant Gazlay for help, he was told that if he complained any more, he would not receive a bonus. When Plaintiff took his complaint to Defendant Berry, he was told to quit his job and to stop complaining. Plaintiff states that when he was interviewed by Defendant Maki with regard to his request for a job reassignment, she called him an "instigator," and told him that he needed to learn to get along with staff. Defendant Maki then refused to return him to food service, despite the fact that other prisoners had been returned to food service many different times after receiving misconduct reports. In addition, Plaintiff states that Defendant Maki placed unusual restrictions on his work assignment and made false statements to the effect that Plaintiff did not want to work with food service staff.

Although Defendants correctly note that Plaintiff's claims regarding the misconduct ticket cannot be used to support the conspiracy claim, Plaintiff asserts numerous other facts in support of his retaliation and equal protection claims. As noted above, Defendants are not entitled to summary judgment on the merits of Plaintiff's underlying retaliation and equal protection claims, so that Plaintiff's conspiracy claims may not be dismissed for that reason. However, Defendants also claim that Plaintiff has failed to show that there was an agreement between Defendants to violate Plaintiff's rights. The undersigned notes that "[e]xpress agreement among all the conspirators is not necessary to find the existence of a civil conspiracy." *American Postal Workers Union v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004).

> Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the

>> general conspiratorial objective, and that an overt act was committed
>> in furtherance of the conspiracy that caused injury to the complainant.

*Id.* (*citing Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985).

   A review of the allegations in Plaintiff's complaint reveals that although Plaintiff has sufficiently alleged that the Defendants shared the same general objective (to deprive him of his rights), and that at least one overt act was committed in furtherance of that objective, Plaintiff has failed to allege that a single plan existed. *American Postal Workers Union*, 361 F.3d at 905. Because Plaintiff has failed to show an actual agreement between the Defendants, Defendants are entitled to summary judgment on Plaintiff's conspiracy claims.

   Finally, Defendants claim that they are entitled to qualified immunity on Plaintiff's claims. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

   The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable

in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:
>
> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established.

*Turner*, 119 F.3d 425. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Thus, where the underlying claim is one in which a certain motive or intent is an element, and plaintiff has made allegations which, if proven, will establish the existence of the necessary state-of-mind, a factual issue exists, preventing dismissal pursuant to Rules 12(b)(6) or 56. *See Sanchez v. Sanchez*, 777 F. Supp. 906 (D.N.M. 1991). In the Sixth Circuit, plaintiff need not include such allegations in his complaint, since in preparing his Complaint, he has no duty to anticipate affirmative defenses. *Dominique v. Telb*, 831 F.2d 673, 676 (1987). However, once the affirmative defense is raised, plaintiff must come forward with such additional facts as would establish the requisite state of mind). *Id.*

> Accordingly, when a plaintiff pleads his claim in generalized "notice" form, and the defense of qualified immunity is asserted through a motion to dismiss, the plaintiff is required to respond to that defense. If his original complaint is deficient in that regard, he must amend his complaint to include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity. For example, if the original complaint alleged that a police officer "used excessive force," and qualified immunity is asserted, then plaintiff would be required to amend with allegations of evidence sufficient to demonstrate that the force used against him was, indeed, unreasonable. It is in this sense that a heightened standard attaches to plaintiff's pleading.

*Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir. 1995).

In the opinion in the undersigned, Defendants are entitled to summary judgment on Plaintiff's procedural, substantive due process, and conspiracy claims. In light of the pleadings, Plaintiff has failed to state a claim upon which relief can be granted with regard to these claims. Therefore, Defendants are entitled to qualified immunity with regard to Plaintiff's procedural,

substantive due process and conspiracy claims. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429.

With regard to Plaintiff's retaliation and equal protection claims, the ambit of a prisoner's rights to free speech and to petition the state for redress of grievances must be measured with regard to the legitimate needs of the institution. *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996) (citing *Wolfel v. Bates*, 707 F.2d 932, 933 (6th Cir. 1983)). The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). Where there is a genuine issue of material fact as to whether Defendants' conduct was motivated by a desire to discriminate against Plaintiff because of his race or to retaliate against him because of his conduct in filing grievances, they are not entitled to summary judgment. Therefore, Defendants are not entitled to qualified immunity on Plaintiff's retaliation and equal protection claims.

In summary, in the opinion of the undersigned, Plaintiff has sustained his burden of proof in response to Defendants' motion for summary judgment with regard to his equal protection and retaliation claims. However, for the reasons stated above, Defendants are entitled to summary judgment on Plaintiff's procedural and substantive due process claims, as well as any claims which involve the allegedly "false" misconduct written by Defendant Hodges. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #17) be granted, in part, and denied, in part.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of

this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   June 22, 2006