UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID N. WILSON,
a/k/a DAVID N. WILSON-BEY,

    Plaintiff,

v.                                                          Case No. 2:05-cv-106
                                                HON. R. ALLAN EDGAR
TIM BUSCHELL, et al.,

    Defendants.

_____/

**MEMORANDUM**

This case came before this Court for trial without a jury on September 19, 2007. This Memorandum is the Court's findings of fact and conclusions of law.

Plaintiff David N. Wilson a/k/a David N. Wilson-Bey ("Wilson"), a Michigan state prisoner in the custody of the Michigan Department of Corrections ("MDOC"), brings this civil rights action under 42 U.S.C. § 1983. Wilson's claims are based on events that are alleged to have occurred while he was imprisoned at MDOC's Baraga Maximum Correctional Facility ("BMCF") in Baraga, Michigan. The defendants are employed by MDOC at BMCF. The defendants are Food Service Supervisor Tim Buschell ("Buschell"), Food Service Supervisor John Hodges ("Hodges"), Food Service Assistant Director Ray Gazlay ("Gazlay")[1], Food Service Director Herbert Barry

---

[1] Mr. Gazlay is now retired.

("Barry"), and Classification Director Amy Maki ("Maki")[2].

Wilson's claims fall into two basic categories: (1) race discrimination in violation of Wilson's right to equal protection of the law under the Equal Protection Clause in the Fourteenth Amendment to the United States Constitution; and (2) retaliation in violation of Wilson's right to petition MDOC and Michigan state government for redress of grievances under the First Amendment to the United States Constitution. Wilson seeks a declaratory judgment, an injunction, and compensatory and punitive damages.

I.      **Fourteenth Amendment Equal Protection**

The first claim is that defendants Buschell and Maki subjected Wilson to race discrimination in violation of Wilson's right to equal protection of the law under the Equal Protection Clause in the Fourteenth Amendment to the United States Constitution. Wilson, who is African-American, was assigned to work in the BMCF kitchen. Wilson contends that Food Service Supervisor Buschell, who is Caucasian, required or forced Wilson and other African-American prisoners to perform work and do jobs assigned to white (Caucasian) prisoners while the white prisoners sat around doing nothing. It is alleged that failure to comply with Buschell's orders and directions would result in adverse action including loss of bonus pay for overtime work, being terminated from kitchen jobs assignments, and/or the issuance of prisoner misconduct charges. It is further alleged that when Wilson confronted Buschell about this race discrimination, Buschell said something like, "You people don't do what I do, stay in your place Wilson." Wilson contends that this statement by Buschell is proof of an intent to

---

[2] Ms. Maki's newly acquired surname is Almli.

2

discriminate against Wilson on account of his race.

On September 6, 2004, Wilson submitted a prisoner grievance to MDOC against Buschell for "racial intimidation." Wilson contends that Buschell and Hodges subsequently placed misconduct charges ("write-ups") in Wilson's prisoner work record charging Wilson with being disruptive and uncooperative. As a result, Wilson claims that he was deprived of $40.19 in bonus pay for the month of September 2004, and Wilson was ultimately terminated from his work assignment in the kitchen.

Wilson further contends that in the aftermath of his problems with Buschell, defendant Maki engaged in race discrimination and violated Wilson's Fourteenth Amendment right to equal protection. Maki was responsible for making the prisoner work assignments. Maki denied Wilson's request to be reinstated to the kitchen job and Maki assigned Wilson to a lower paying job. Wilson asserts that Maki treated him differently from similarly situated white prisoners who were reinstated and returned to their jobs in food services at BMCF after being found guilty of more serious misconduct charges compared to Wilson. In short, Wilson contends that Maki denied him the same rights and treatment that Maki gave to other similarly situated white prisoners.

The Equal Protection Clause in the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." It essentially requires that all persons similarly situated should generally be treated alike and should not be subjected to intentional, arbitrary discrimination by state government actors on account of race. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 502 ( 6th Cir. 2007); *Bennett v. City of*

3

*Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005); *Chambers v. Stengel*, 256 F.3d 397, 401 (6th Cir. 2001). The Fourteenth Amendment prohibits the State of Michigan and its MDOC employees acting within the scope of their employment from committing acts of intentional, arbitrary race discrimination and treating Wilson differently from other similarly situated prisoners because of Wilson's race. *Knop v. Johnson*, 977 F.2d 996, (6th Cir. 1992) (Racial harassment by Michigan state government employees against state prisoners can violate rights protected by the Fourteenth Amendment's Equal Protection Clause).

     To prevail on his equal protection claim, Wilson bears the burden of proving all of the following elements by a preponderance of the evidence: (1) the defendant took some adverse action against Wilson; (2) the defendant acted with the intent or purpose of discriminating against Wilson on account of Wilson's race as an African American; (3) the defendant acted under color of Michigan state law; and (4) the defendant's acts were a proximate cause of injury to Wilson.

     Racial discrimination does not have to be the dominant or primary factor, and Wilson does not have to prove that a defendant's actions were based solely on an intent or purpose to racially discriminate against Wilson. To prevail on an equal protection claim, Wilson must prove that a racially discriminatory purpose was a substantial or motivating factor in a defendant's conduct. It is sufficient if Wilson proves that race discrimination was a substantial consideration that made a difference in a defendant's decision to take adverse action against Wilson. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 229, 265-66 (1977); *King v. City*

*of Eastpointe*, 86 Fed. Appx. 790, 802 (6th Cir. 2003); *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995); *United States v. City of Birmingham, Michigan*, 727 F.2d 560, 565 (6th Cir. 1984); *Harris v. Hulkoff*, 2007 WL 2479467, * 5 (W.D. Mich. Aug. 28, 2007); *Smith v. Michigan Department of Corrections*, 2007 WL 1582223, * 4 (W.D. Mich. May 31, 2007).

A defendant's mere use of racially discriminatory language such as a racial slur or epithet, by itself, does not constitute a violation of the Fourteenth Amendment right to equal protection. It can constitute some evidence of a defendant's intent or purpose to discriminate against a plaintiff on account of the plaintiff's race. For there to be an actionable violation of the Fourteenth Amendment right to equal protection, a racial slur or epithet made by a defendant must be coupled with an adverse action taken against plaintiff Wilson. *Taylor v. City of Falmouth*, 187 F.3d 596, 601 (6th Cir. 2006); *King*, 86 Fed. Appx. at 814 (Moore, J., concurring in part and dissenting in part).

The particular statement attributable to Mr. Buschell does not in itself clearly constitute a racial statement. The Court has evaluated the testimony of Wilson's inmate witnesses as well as that of the defendants. The Court concludes that Wilson has not proved by a preponderance of the evidence that he was subjected to any adverse action because of his race, nor is there credible evidence that any defendant took any action with intent to discriminate. It should be noted that witnesses called by Wilson negate any discriminatory action on the part of Maki. She placed many African-American inmates back into the kitchen after they had been disciplined. Therefore, Mr. Wilson's equal protection claim lacks merit.

5

## II.     <u>First Amendment Retaliation</u>

The filing of a grievance by a prisoner against prison officials is generally conduct protected under the First Amendment. Retaliation by prison officials based on a prisoner's exercise of his First Amendment right violates the Constitution. Frivolous grievances, however, are not constitutionally protected conduct. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005); *Jackson v. Madery*, 158 Fed. Appx. 656, 660 (6th Cir. 2005); *King v. Zamiara*, 150 Fed. Appx. 485, 493 (6th Cir. 2005); *Walker v. Michigan Department of Corrections*, 128 Fed. Appx. 441, 445-46 (6th Cir. 2005); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Heron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Jackson v. Boatman*, 2007 WL 2320531, * 12 (W.D. Mich. Aug. 10, 2007).

To prevail on his retaliation claim against a defendant brought under 42 U.S.C. § 1983, Wilson must prove all of the following elements by a preponderance of the evidence: (1) Wilson engaged in conduct protected by the First Amendment; (2) the defendant took adverse action against Wilson that would deter or was capable of deterring a person of ordinary firmness from engaging in that protected conduct; (3) the defendant's adverse action was motivated, at least in part, by Wilson's protected conduct; and (4) the defendant acted under color of Michigan state law. *Harbin-Bey*, 420 F.3d at 579; *Jackson*, 158 Fed. Appx. at 660; *King*, 150 Fed. Appx. at 491; *Walker*, 128 Fed. Appx. at 445; *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002); *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004); *Heron*, 203 F.3d at 415; *Thaddeus-X v. Blatter*, 175 F.3d 378, 388, 399 (6th Cir. 1999) (en banc); *Jackson*, 2007

WL 2320531, at * 12.

With regard to the third element, Wilson must prove that the exercise of his First Amendment right to file grievances was a substantial or motivating factor in the defendant's retaliatory conduct. *Smith*, 250 F.3d at 1037; *Thaddeus-X*, 175 F.3d at 399; *Jackson*, 2007 WL 2320531, at * 12.

Mr. Wilson did file a grievance alleging "racial intimidation" in September 2004. However, he, at times, was an uncooperative and argumentative employee in the prison kitchen. In October, 2004, he received a misconduct ticket for telling a supervisor to "get the fuck off my back". This, not any racial or retaliatory motive, caused Wilson to lose his kitchen job. Defendant Maki, who had no knowledge of any grievance that Wilson may have filed, made the decision to put him in another job, and then eventually back into a kitchen job a year later. Wilson was then again terminated in the kitchen for fighting. There is no evidence whatsoever that Maki nor any of the defendants, were taking retaliatory action in response to any grievance in this complaint that Wilson may have filed. He thus has no valid First Amendment claim.

### III.   Conclusion

For the above reasons, judgment will be entered for all defendants.


Date: 9/20/07                                               /s/ R. Allan Edgar
                                                    R. ALLAN EDGAR
                                                    UNITED STATES DISTRICT JUDGE